## Bank of St. Helens v. Mann's Executor.

(Decided June 22, 1928.)

(As Modified on Denial of Rehearing, December 14, 1928.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Husband and Wife.—At common law, a married woman could not become a surety.
2. Principal and Surety.—In determining whether or not contract is one of suretyship, court will consider substance rather than mere form of contract.
3. Contract.—There is consideration if promisee, in return for promise, does anything legal which he is not bound to do, or refrains from doing anything which he has right to do, whether there is any actual loss or detriment to him or actual benefit to promisor or not.
4. Constitutional Law.—Courts are bound by statutory law relating to married woman's liability on contract to answer for debt of another, including her husband, as written in Ky. Stats., sec. 2127.
5. Husband and Wife.—Where method provided by Ky. Stats., sec. 2127, for married woman to become responsible for debt of another was not followed, wife was not liable for balance due on note for husband's debt, even though there was consideration moving to wife, since statutory method is only way married woman may become responsible for another's debt.

HENRY G. BEDINGER for appellant.

JOHN IRICK and JOHN B. BASKIN for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

The bank of St. Helens sued Constance R. Mann upon a balance which it alleged was due it upon a note for $5,800.58 executed to it by her. In her answer, she did not deny executing it, or the correctness of the balance sued for, but averred that the whole thereof was the debt of her husband, Louis Mann, and that she was, at the time she executed the note, a married woman.

Plaintiff by its reply admitted that, and pleaded further that the note represented in part a debt of Louis Mann, who was the owner of a farm in Jefferson county, and that he and his wife had borrowed $4,500 from the Federal Land Bank of Louisville, for which they executed their note, and, to secure it, they gave a mortgage on the farm. They were sued on that note, and a judgment obtained against them. The farm was ordered sold in satisfaction thereof, and the sale was to be had on July 14, 1924, and, to defer it, Mrs. Mann asked plaintiff to buy the judgment and to hold up the sale for 60 days. At that time Louis Mann owed the plaintiff $951.81, and it consented to buy the judgment, provided Mrs. Mann would give it her note for enough to pay the $951.81 her husband owed it, the $4,700.00 represented by this judgment, and $148.77 to pay taxes on the farm that were in arrears, to which she agreed, and executed the note sued on. She and her husband were not able to pay the debt within the 60 days, and the farm was sold under the judgment. The money realized from the sale was credited on the $5,800.58 note and left a balance due thereon of something over $900, which was the amount the bank sued for. Upon the trial of the case, the court gave a peremptory instruction to find for Mrs. Mann. The bank's motion for a new trial was overruled, and it has appealed. Mrs. Mann died testate on March 9, 1928, and, by order of this court, this action was revived against the Liberty Insurance Bank, the executor of her will. The note was the debt of Louis Mann. No part of it was the debt of his wife, and the bank knew that. There was but one method by which Mrs. Mann could be made responsible for the debt, and that was the one pointed out in section 2127, Ky. Statutes, which was not followed.

At common law, a married woman could not become surety. See 30 C. J. p. 740; Woodrough et al. v. Perkins, 4 Ky. (1 Bibb) 288. In determining whether or not the contract is one of suretyship, the court will consider the substance, rather than the mere form, of the contract.

The Federal Land Bank had a judgment against both Mr. and Mrs. Mann for something like $4,700, interest and all. The suggestion is made on behalf of plaintiff that the land, if sold in July, may not have brought exceeding $3,000, and thus on that judgment there would have been left a balance of about $1,700 against Mrs. Mann. It is argued for the bank that, by its advancing

the money to purchase this judgment when it did, she secured further time in which to sell this property, a distinct advantage to her, and the bank incurred the risk of the farm not bringing enough to pay the judgment, a risk which was a distinct disadvantage to it; therefore it is said that there was a consideration moving to Mrs. Mann for this undertaking. The farm, when sold, brought enough to pay the judgment. The debt she assumed for her husband is all that is left.

It is the contention of the bank that, if there was a consideration for this, Mrs. Mann should be required to pay the debt. We are bound to admit there was a consideration, and we are compelled to so hold, because of this, which is taken from the case of Brady v. Equitable Trust Co., 178 Ky. 693, 199 S. W. 1082:

> "There is a consideration if the promisee in return for the promise does anything legal, which he is not bound to do, or refrains from doing anything, which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not."

The court found in that case that there was a consideration moving to Mrs. Brady; yet this court reversed a personal judgment that had been recovered against her. We must construe section 2127 as written. If the Legislature had desired to have this law to be as the bank here contends, it would have been very easy for it to have written this statute in this way: *Unless there be a consideration moving to her, no part of a married woman's estate shall be subjected, etc.* It did not so write the law, and we are bound by the law as written. The method pointed out by section 2127, Ky. Stats., for a married woman to become responsible for the debt of another is not one of several ways in which she may do so; it is the only way.

In the case of Deposit Bank of Carlisle v. Stitt, 107 Ky. 49, 52 S. W. 950, 21 Ky. Law Rep. 671, Ollie B. Stitt desired to borrow $150 from appellant to send her husband to the Keeley Cure. The proof tends to show that it did not suit the bank exactly to lend her the money, but it held an unpaid note on her husband for $125, and, in consideration of her assuming this debt and executing to the bank her note for $125 in lieu of her husband's note held by it, it lent her the $150, and took her note

with security for that amount also. She paid the note given by her for the money that she borrowed, but declined to pay the note for $125 executed in lieu of the note held by the bank on her husband, and suit was brought upon it. The lower court held that she was not liable, and we affirmed that judgment. The opinion in that case has been cited with approval in Milburn v. Jackson, 52 S. W. 949, 21 Ky. Law Rep. 700; Postell v. Crumbaugh, 66 S. W. 830, 23 Ky. Law Rep. 2193; Hall v. Hall, 118 Ky. 656, 82 S. W. 269, 26 Ky. Law Rep. 553; Cook v. Landrum, 82 S. W. 585, 26 Ky. Law Rep. 813; Black v. McCarley's Ex'r; 126 Ky. 825, 104 S. W. 987, 31 Ky. Law Rep. 1198; Third Nat. Bank v. Tierney, 128 Ky. 836, 110 S. W. 293, 33 Ky. Law Rep. 418, 18 L. R. A. (N. S.) 81; Swearingen's Ex'r et al. v. Tyler, 132 Ky. 458, 116 S. W. 331; Brady v. Equitable Trust Co., 178 Ky. 693, 199 S. W. 1082; Bryant v. Jones, 183 Ky. 298, 209 S. W. 30; Baskett v. Rudy, 186 Ky. 208, 217 S. W. 112. That must be said to be the settled law of this state. The bank relies on the case of Williams v. Farmers' & Drovers' Bank, 49 S. W. 183, 20 Ky. Law Rep. 1273, but that case is not applicable. In that case, the Waldorf Restaurant & Vienna Bakery Company had executed to that bank 10 notes of $250 each. Subsequently Mrs. G. M. Williams and Mrs. B. R. Williams bought of R. S. Brown his stock in the Waldorf Restaurant & Vienna Bakery Company, and, by indorsement on the back of these notes, undertook to pay them. Subsequently they were sued and judgment recovered against them. Mrs. B. R. Williams appealed, and this court affirmed that judgment, but said:

"We are also of opinion that the signing of all these obligations by appellant was an original obligation by her, and was not a suretyship, or a contract to answer for the debt or default of another."

A married woman is fully empowered to engage in business, take, acquire, and hold both real and personal property and sell and dispose of same as if she were unmarried. She may make contracts and sue and be sued as a single woman. The only limitation placed upon her entire freedom of contract is that contained in sections 2127, 2128, Kentucky Statutes, and one of those limitations is that she may not become surety for another, except in the manner there provided. The case of Bryant v. Jones, 183 Ky. 298, 209 S. W. 30, is cited as an author-

ity directly in point. In that case, C. L. Jones and his wife, Maud Jones, were the joint owners of a house and lot in Williamsburg. C. L. Jones owed a note to one Meadors upon which H. L. Bryant was surety. C. L. Jones made a contract with his wife by which he conveyed her his one-half interest in this house and lot, and in payment therefor she undertook and assumed the payment of the note to Meadors. When the note fell due, C. L. Jones failed to pay it, and his surety on that note was compelled to do so, whereupon H. L. Bryant sued Maud Jones, setting up the above facts and that the contract between Jones and his wife, by which she became the owner of the husband's interest in the house and lot, was made for his benefit, and sought to make Maud Jones liable to him for the amount which he was compelled to pay to Meadors. The court sustained a demurrer to his petition. Bryant appealed, and this court, in reversing the judgment, said:

"The purpose evinced, is not the assumption of the husband's debt, or to pay it, upon the condition, that he fails to do so, as the wife would do, as a surety, but, it is a contract for the purchase of the husband's real estate, and the promise to pay unconditionally, the husband's debt as the purchase price. It must be assumed, upon demurrer, that the consideration for the promise, was sufficient, and the inducement for the contract. The promise was not to the creditor. The consideration for the promise was a new and different consideration from the one upon which the execution of the note was based. Hence, the promise is not one 'to answer for the debt, default or misdoing of another,' within the spirit and meaning of the prohibition of the statute. It seems to be a contract, so far as concerns the wife, entirely independent and unconnected with the contract between the husband and Meadors, and founded upon a substantial consideration received by her."

The bank here is relying on the case of Scott v. First Nat. Bank of Pikeville, 221 Ky. 297, 298 S. W. 949, but what occurred in that case was this: Mr. and Mrs. Scott were interested in a coal company. Mrs. Scott borrowed from the bank $2,500, for which she gave it her note. She at the same time gave to the coal company, in which she was interested, a check for that same amount. In other

words, this was a plain case of her borrowing from the bank $2,500 to loan to this coal company, and the court very properly held that she had to pay the note, but that is different from what we have here. If Mrs. Mann had borrowed this money to pay her husband's debt to somebody else, that would be a very different situation from the situation we have. We are unable to distinguish this case from the case of Deposit Bank of Carlisle v. Stitt, supra, and that opinion has been followed so long and adhered to so often that it cannot now be disturbed.

Hence it follows that the trial court did not err in directing the jury to find for the defendant, and its judgment is affirmed.

The whole court sitting.